262

**STATE, ex rel. BAKOS, Plaintiff, v. CORRIGAN et, Defendant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23795.    Decided January 24, 1957.

McConnell, Blackmore, Cory, Burke & Kuntz, for plaintiff.

Ralph S. Locher, Dir. of Law, Richard O. Horn, Asst. Dir. of Law, for defendant.

(STEVENS, PJ, HUNSICKER and DOYLE, JJ, of the Ninth District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

This is an action in mandamus, commenced in the Court of Appeals of the Eighth Judicial District of Ohio.

The relator, Michael A. Bakos, was an employee in the Division of Police of the City of Cleveland. The defendants are the Board of Trustees of the Police Relief and Pension Fund of the City of Cleveland.

The petition prays for a writ of mandamus "commanding the defendants as the Board of Trustees * * * to accept the relator's tender of contributions due the fund for the period of January 10, 1930, to August 25, 1937, to constitute him a beneficiary under the rules and regulations governing the said Police Relief and Pension Fund; to place his name upon the pension roll and cause to be issued to him forthwith the sum of fifteen hundred dollars ($1,500.00), the same being the accrued pension to which he is entitled from the period of May 1, 1955, to the date of the filing of this petition to cause to be paid to him such additional amounts as have accrued or may accrue to him pursuant to the benefits allowed to a retired member with twenty-five (25) years of service with the Division of Police, and for such other relief as may be proper in the premises."

Salient facts appearing in the stipulations are:

(1) September 19, 1929, relator was appointed a temporary radio

operator in the Division of Police by the Director of Public Safety, at a salary of $2,600.

(2) January 27, 1930, as a result of a practical and written test relating to qualifications for the position of radio operator, relator was awarded a permanent appointment as "radio operator in the Cleveland Division of Police."

(3) In the years 1932 and 1935 relator placed in the 295th and 278th positions, respectively, on the eligible list for patrolman in the Division of Police.

(4) December 21, 1936. Effective as of this date, the city council, by ordinance No. 105285 A, provided for the inclusion of four (4) radio operators "as members of the Division of Police."

(5) Effective as of February 16, 1937, and July 1, 1937, ordinances No. 105741 and No. 106728 provided that the rate pay for radio operators as members of the Division of Police be two thousand four hundred nineteen dollars and sixty-eight cents ($2,419.68) per year—an amount equal to the then prevailing rate pay for patrolmen in the Division of Police of the city.

(6) June 3, 1937. The director of public safety advised the chief of the Division of Police that the relator was, as of this date, "appointed to the position of radio operator in the Division of Police" at the salary mentioned in (5) above.

(7) June 23, 1937. Relator was given a police badge.

(8) August 25, 1937. At a regular meeting, the Board of Trustees of The Cleveland Police Relief and Pension Fund adopted a resolution which declared that radio operators in the Cleveland Division of Police, by virtue of ordinances No. 105741 and No. 106728 (mentioned in 5 above), "were entitled to the protection and privileges of the pension laws, wherefore such incumbent radio operators and their successors were declared as eligible to the benefits of the Police Pension Fund by agreeing to the voluntary payment of the sum of one dollar ($1.00) per month."

(9) Commencing January 27, 1930, the time at which relator was appointed permanent radio operator in the Division of Police, and on subsequent occasions, the said relator offered himself as a voluntary member of the Police Pension Fund and offered to pay a monthly amount into the fund "as the Board of Trustees would then deem appropriate."

The Board of Trustees rejected these offers and refused to accept him as a member to the date of August 25, 1937, at which time the resolution, stated in (8) above, became effective.

(10) On August 25, 1937, the time when relator was accepted as a member of the Relief and Pension Fund, he "offered to pay such voluntary contributions into the fund for the period during which he was denied membership therein as the then Trustees * * * would deem appropriate, and that the then Trustees * * * refused to receive such offered contributions from relator."

It further appears in the stipulations of fact that, in 1930, when the relator was appointed as radio operator, Sec. 186 of the Cleveland Municipal Code provided, in part:

"There shall be and there is hereby established a division of police

in the department of public safety, to be administered and controlled by a chief of police, subject to the provisions of the charter and ordinances of the city of Cleveland and to the director of public safety. The division shall consist of the following persons: A chief of police, one inspector of police, one commissioner of traffic, who shall be in command of the traffic bureau; one deputy commissioner of traffic, who shall act as deputy to the commissioner of traffic; four deputy inspectors of police; * ¦ * and such number of employees in other classifications of city service as the city manager may determine."

Sec. 31 of the "Rules and Bylaws of the Cleveland Police Relief and Pension Fund," as adopted and made effective on April 30, 1930, by the Police Relief and Pension Board, is as follows:

"The terms 'member,' 'member of the Division of Police,' 'member of the department' and 'member of the Police Department of the City of Cleveland,' as herein used, are defined to mean a person who at the time he or she, or his or her dependents, are placed upon the Police Relief roll, is or at some time theretofore has been a duly appointed, qualified and acting member of the Division of Police of the City of Cleveland."

On April 30, 1955, the relator offered his resignation and retired from the department; simultaneously, he submitted his written application to the defendants, requesting that his name be placed on the pension roll, and that he be permitted to participate in the pension fund to the extent allowed a member thereof with twenty-five years of service.

From the foregoing, it is obvious that the relator's name was not placed on the rolls in compliance with his request, and that this lawsuit is the result thereof.

The plaintiff states in its brief the following:

"The sole issue in this matter relates to whether or not relator should be considered a 'member' of the Division of Police of the City of Cleveland so as to make him eligible to contribute to the Police Relief and Pension Fund, and to receive, upon his completion of twenty-five years of service with the Division and twenty-five years of contributions to such fund, the benefits then inuring to such member and contributor."

In connection with the question stated by plaintiff, we have the additional questions of (1) whether relator has shown the failure of the Board of Trustees to perform acts which the law specifically enjoins as a duty resulting from the office, trust or station; and (2) incidental thereto. Did the Board act without authority or abuse its discretion in refusing to allow relator to become a contributing member prior to the year 1937, or in its refusal to allow relator to pay into the fund an amount equal to contributions for the period from September 19, 1920, until 1937, based upon a rate established in 1937 for radio operators?

The state law governing the operation of the Board during the years 1929 to 1937, read as follows:

"Sec. 4628 GC.:

"Such trustees shall make all rules and regulations for distribution of the fund, including the qualifications of those to whom any portion of the fund shall be paid, and the amount thereof, with power also to

give credit for prior continuous actual service in the fire department or any other department of the city rendering service in fire prevention, but, no rules or regulations shall be in force until approved by a majority of the board of trustees."

"Sec. 4625 GC.:

"The trustees of the fund may also receive such uniform amounts from each person designated by the rules of the police department, a member thereof, as he voluntarily agrees to, to be deducted from his monthly pay, and the amount so received shall be used as a fund to increase the pension which may be granted to such person or his beneficiaries, or in the discretion of such trustees money derived from such monthly deductions shall be used to relieve members of the force who contribute thereto when sick or disabled from the performance of duty, for funeral expenses, relief of their families in case of death or for pensions when honorably retired from the force."

Under the authority of §4628 GC, the Board was empowered to make all rules and regulations for the distribution of the fund, "including the qualifications of those to whom any portion of the fund shall be paid." Likewise, under authority of §4625 GC, the trustees were empowered to receive, "from each person designated by the rules of the police department, a member thereof," uniform amounts for specified purposes. Nowhere is it shown in the rules adopted that radio operators were specifically included among those entitled to participate in the fund; and obviously, the Board, in interpreting its own rules and regulations, concluded that radio operators should not qualify.

This ruling of the Board we find not to have been arbitrary or an abuse of discretion. It is entirely consistent with the definition given by its own rules of the "terms 'member,' (and) 'member of the Division of Police,'" Sec. 31 of the Rules and Bylaws, supra.

It was reasonable to interpret the language of the section—i. e., "duly appointed, qualified and acting member of the Division of Police"—as applicable only to that class of persons who had been appointed to the department for police duties from a civil service eligible list, and not to a class of persons who held an office in the department as the result only of having passed another type of examination for radio operators only.

It is further observed that, during the years 1930 to 1937, the relator was aware of the construction placed upon the rules and regulations of the Board in the light of the statutes of the state. At no time during this period did he take action to avoid the construction given by the Board.

While construction given to rules and regulations by boards of this character is not conclusive upon courts, nevertheless it is entitled to weight and consideration; and the practical interpretation placed upon these rules and regulations by board members whose duty it is to administer and enforce them, should not be lightly discarded.

We find no clear legal right to the writ sought.

Writ denied.

STEVENS, PJ, HUNSICKER, J, concur.